UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MACDERMID, INC. | : |
| v. | : Civil Action No. |
| SURFACE TECHNOLOGY, INC. | : JUNE 7, 2013 |

## COMPLAINT

The Plaintiff, MacDermid, Inc. ("MacDermid"), for its Complaint against Defendant, Surface Technology, Inc. ("STI"), alleges as follows:

## NATURE OF THE ACTION

1.  This is an action for unjust enrichment and declaratory judgment under the Patent Laws of the United States of America, 35 U.S.C. § 1, *et seq.* and under the common law arising from a patent license agreement entered into by and between MacDermid and STI.

## PARTIES

2.  MacDermid is a Connecticut corporation having a principal place of business at 245 Freight Street, Waterbury, Connecticut 06702.

3.  MacDermid is a specialty chemical company engaged in the electronics, industrial, offshore, and printing industries.

4.  STI is a New Jersey corporation having its principal place of business at 105 North Gold Drive, Robbinsville, New Jersey 08691.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 2201. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. There has been and is now a substantial and continuing justiciable controversy between MacDermid and STI regarding the subject matter of this suit.

6. Venue is proper within this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b).

7. As more fully described herein, the Court has personal jurisdiction over STI because, *inter alia*, (1) the causes of action asserted herein arise out of STI's transaction of business in Connecticut, (2) the causes of action asserted herein arise out of a contract to be performed in Connecticut, (3) the causes of action asserted herein arise out of business solicited in Connecticut and STI has repeatedly so solicited business, and (4) the causes of action asserted herein arise out of STI's tortious conduct in Connecticut.

## FACTS

8. This controversy arises from 32-year-old technology on which STI is attempting to force MacDermid to pay royalties, well after any patent protection STI might have been entitled to should have expired.

9. On April 1, 1981, STI filed U.S. Pat. Application Serial Number 06/249,773 relating to compositions and methods for plating nickel with particulate matter to form a composite nickel-particle coating.

{N0960006}                                    2

10. STI's application admitted that it was known in this technological field to electrolessly plate nickel with particulate matter. Instead, STI's invention was allegedly derived from the discovery of certain stabilizers that can be used to stabilize the particulate matter in the electroless nickel plating solution. In reality, this was no discovery at all because of publically accessible scientific research predating STI's application, which would have taught or motivated a person of ordinary skill in the art to use STI's particulate matter stabilizers in electroless nickel plating solutions anyway.

11. STI's application also discussed how stability of the particles in the plating solution can be measured by a property known as "zeta potential." STI's application disclosed that certain stabilizers can result in a shift in zeta potential of 5 millivolts (mv) or more.

12. After STI filed its patent application, the United States Patent and Trademark Office ("Patent Office") rejected STI's application many times. However, the Patent Office's procedures at the time allowed STI to continually and repeatedly re-file its application to receive a fresh examination as long as STI continued to pay the Patent Office's fees. Therefore, unsatisfied with each successive Examiner's decisions, STI unreasonably and inexcusably requested examination of its application over and over.

13. While its original application contained some specific claims that narrowed STI's invention to stabilizers that achieved certain zeta potential shifts, STI unreasonably and without excuse forewent the assertion of such claims during STI's repeated examinations.

14. In any event, after about 10 years at the Patent Office and after STI shopped its application to multiple patent examiners, STI was finally able to induce the

Patent Office to allow its claims. The Patent Office issued U.S. Pat. No. 4,997,686 to STI on March 5, 1991 (the "'686 Patent"), which covered a process for electroless nickel plating as discussed above. The Patent Office also issued U.S. Pat. No. 5,145,517 to STI on September 8, 1992 (the "'517 Patent"), which covered an electroless nickel plating composition as discussed above.

15. Around this time, STI approached MacDermid with its patents and patent applications and offered to license them to MacDermid in return for royalties. MacDermid agreed to accept STI's license and pay royalties only on the products MacDermid sold that infringed valid and enforceable claims of the '686 Patent, the '517 Patent, or any future patents issued from STI's original application (collectively "the STI Patents"). MacDermid and STI entered into a License Agreement to this effect on September 16, 1992, which is attached hereto as Exhibit A.

16. The License Agreement provided that it would terminate when the last of the STI Patents expired. As of September 16, 1992, the last of the STI Patents to expire was the '517 Patent, which expired on September 8, 2009.

17. It is a fundamental precept of Patent Law that an inventor has the right to receive only one patent for each invention he or she creates. Otherwise, if multiple patents could be obtained, the inventor would be able to extend its patent monopoly beyond the time period set by Congress. Therefore, for example, if an applicant attempts to obtain two patents on the same invention or obvious variations thereof, the Patent Office is supposed to require that the applicant file what is known as a "Terminal Disclaimer," which disclaims any term of the second patent that would extend the applicant's monopoly beyond the expiration of the first patent.

18.     Therefore, MacDermid and STI entered into the License Agreement with the mutual understanding that, unless STI's original patent application disclosed multiple inventions, any additional patents STI obtained from the original application would be subject to a terminal disclaimer. Alternatively, MacDermid believed the foregoing and STI induced MacDermid to enter the License Agreement with knowledge or constructive knowledge that MacDermid believed the foregoing.

19.     After MacDermid and STI entered into the License Agreement, MacDermid fully performed all of its obligations thereunder and paid STI royalties for many years. However, unbeknownst to MacDermid, after MacDermid and STI entered into the License Agreement, STI set out on a course to inequitably extend the life of the STI Patents by seeking additional patents from the Patent Office covering the same invention as the '686 Patent and the '517 Patent or obvious variations thereof.

20.     STI filed new applications that reasserted the narrower process claims that it had abandoned years before to the more specific stabilizers that could shift a particle's zeta potential by 5 mv or more. STI could have received such claims in the '686 Patent had it not withdrew them from consideration many years earlier.

21.     STI slowly prosecuted these new applications, which resulted in the issuance of two more patents: U.S. Pat. No. 5,863,616, issued January 26, 1999 (the "'616 Patent") and U.S. Pat. No. 6,306,466, issued October 23, 2001 (the "'466 Patent").

22.     The '616 Patent and the '466 Patent claimed inventions that were anticipated by or rendered obvious by the claims of the prior '686 Patent and/or '517 Patent alone or in combination with other prior art. As a result, the '616 Patent and '466 Patent are invalid under the doctrine of double patenting.

23. Moreover, the '616 and '466 Patents claimed inventions for which STI had unreasonably and inexplicably delayed prosecution. MacDermid and the public were prejudiced by STI's delay. As a result, the '616 Patent and '466 Patent are unenforceable under the doctrine of prosecution history laches.

24. Furthermore, the '616 Patent, the '466 Patent, the '686 Patent, and the '517 Patent are invalid under one or more provisions of the Patent Act 35 U.S.C. § 100, *et seq.*, including 35 U.S.C. §§ 103 and 112.

25. Finally, none of MacDermid's products have ever infringed a valid and enforceable claim of the '616 Patent, the '466 Patent, the '686 Patent, or the '517 Patent.

26. Despite the foregoing, STI contends that MacDermid continues to owe STI royalties under the License Agreement when, in reality, MacDermid does not. For example, on March 25, 1999, STI wrote a letter to MacDermid in Connecticut that misrepresented that the '616 Patent would "provide extended patent protection for [MacDermid] as a licensee." This representation was false because the '616 Patent was void *ab initio* and could provide no extended patent protection for MacDermid as a licensee. STI also wrote a letter to MacDermid in Connecticut on January 28, 2002 informing MacDermid of the '466 Patent.

27. After the '517 Patent expired, STI wrote a letter to MacDermid in Connecticut on January 8, 2013 stating that STI was "questioning whether MacDermid is accurately reporting all sales of product falling under the license agreement." Under the terms of the License Agreement and given the foregoing, STI is not entitled to any royalties on any of MacDermid's sales.

28. Next, on April 9, 2013, STI wrote another letter to MacDermid in Connecticut. This letter claimed that "MacDermid's NiKlad Ice product line . . . is covered by the license." This was false because all of the STI Patents, and particularly the '616 Patent and '466 Patent, are invalid and unenforceable. On April 25, 2013, MacDermid wrote STI a letter in response, controverting STI's allegations and contending that "MacDermid believes that it is properly accounting for royalties that are owed to Surface Technology under our license agreement."

29. Finally, on May 30, 2013, STI wrote another letter to MacDermid in Connecticut. This letter alleged that "not all of MacDermid's products have been accounted for" under the License Agreement. STI then indicated that it wanted to perform an audit of MacDermid's books and records, which was to be performed in Waterbury, Connecticut. Under the terms of the License Agreement, and given the foregoing, STI is not entitled to conduct such an audit because the License Agreement terminated or should have terminated on September 8, 2009 with the expiration of the '517 Patent.

## COUNT ONE – DECLARATORY JUDGMENT OF INVALIDITY

30. Paragraphs 1 through 29 are hereby incorporated by reference as if fully set forth herein.

31. The '616 Patent and '466 Patent are invalid under the doctrine of double patenting.

32. The '616 Patent, the '466 Patent, the '686 Patent, and the '517 Patent are invalid under one or more provisions of the Patent Act 35 U.S.C. § 100, *et seq.*, including 35 U.S.C. §§ 103 and 112.

33. Under the Patent Laws of the United States, including the equitable preemptive doctrine of Lear, Inc. v. Adkins, 395 U.S. 653 (1969), MacDermid has no obligation to pay any royalties under the License Agreement in consideration for a license to the '616 Patent, the '466 Patent, the '686 Patent, and the '517 Patent.

## COUNT TWO – DECLARATORY JUDGMENT OF UNENFORCEABILITY

34. Paragraphs 1 through 33 are hereby incorporated by reference as if fully set forth herein.

35. The '616 Patent and '466 Patent are invalid under the doctrine of prosecution history laches.

36. Under the Patent Laws of the United States, including the equitable preemptive doctrine of Lear, Inc. v. Adkins, 395 U.S. 653 (1969), MacDermid has no obligation to pay any royalties under the License Agreement in consideration for a license to the '616 Patent and the '466 Patent.

## COUNT THREE – DECLARATORY JUDGMENT OF MACDERMID'S OBLIGATIONS UNDER THE LICENSE AGREEMENT

37. Paragraphs 1 through 36 are hereby incorporated by reference as if fully set forth herein.

38. The License Agreement provides, or should be reformed to provide, that MacDermid must only pay royalties to STI on products that infringe at least one valid and enforceable claim of the STI Patent.

39. MacDermid has never sold, or, alternatively, has not sold after September 8, 2009, any products for which STI would be entitled to royalties under the License Agreement.

{N0960006}                                    8

40. The License Agreement provides that it shall terminate by its own terms upon the expiration of the last to expire of the STI Patents. Given the foregoing, the License Agreement therefore provides, or should be reformed to provide, that the License Agreement terminated on September 8, 2009.

41. The License Agreement only gives STI a right to examine certain of MacDermid's books and records for one year after the termination of the License Agreement. Therefore, STI may not conduct an audit of MacDermid's books and records in Connecticut (or anywhere else) as STI demanded in its letter of May 30, 2013.

## COUNT FOUR – UNJUST ENRICHMENT

42. Paragraphs 1 through 41 are hereby incorporated by reference as if fully set forth herein.

43. MacDermid has paid STI money which STI was not entitled to under the License Agreement.

44. MacDermid was under no obligation to pay STI any money under the License Agreement, or, alternatively, was under no obligation to pay STI any money under the License Agreement after September 8, 2009.

45. STI benefitted from and was wrongfully enriched by receipt of this money from MacDermid, which money STI should equitably return to MacDermid.

46. STI has been unjustly enriched to the detriment and damage of MacDermid.

## **PRAYER FOR RELIEF**

WHEREFORE, MacDermid prays for the following:

1.  A declaratory judgment that the '616 Patent, the '466 Patent, the '686 Patent, and the '517 Patent are invalid under one or more provisions of the Patent Act 35 U.S.C. § 100, *et seq.*, including 35 U.S.C. §§ 103 and 112;

2.  A declaratory judgment that the '616 Patent and the '466 Patent are invalid under the doctrine of double patenting.

3.  A declaratory judgment that the '616 Patent and the '466 Patent are unenforceable under the doctrine of prosecution history laches.

4.  A declaratory judgment that none of MacDermid's products infringe any valid and enforceable claim of the '616 Patent, the '466 Patent, the '686 Patent, or the '517 Patent.

5.  A declaratory judgment that MacDermid is not obligated to pay STI any further royalties under the License Agreement.

6.  A declaratory judgment that STI is not entitled to examine or audit MacDermid's books or records in Connecticut or anywhere else under the License Agreement.

7.  Money damages;

8.  An award of attorneys' fees and costs pursuant to 35 U.S.C. § 285;

9.  Prejudgment interest; and

10. Such other relied as this Court deems just and proper.

## JURY DEMAND

MacDermid requests a trial by jury of any issue so triable as of right pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

                    THE PLAINTIFF,
                    MACDERMID, INC.

*/s/ John L. Cordani*
John R. Horvack, Jr.
Federal Bar ct12926
John L. Cordani, Jr.
Federal Bar ct28833
CARMODY & TORRANCE, LLP
195 Church Street
P.O. Box 1950
New Haven, CT 06509-1950
Tel: (203) 777-5501
Fax: (203) 784-3199
jhorvack@carmodylaw.com
jlcordani@carmodylaw.com